### Louis J. Doxey v. Western State Bank, et al.

#### Gen. No. 11,039.

1. SUBROGATION—*who not entitled to.* If a third person, having no interest in mortgaged premises, voluntarily pays the indebtedness secured by the trust deed, he is not entitled merely by such payment to be subrogated to the rights secured by such trust deed.

2. FORECLOSURE DECREE—*when, should be entered, notwithstanding release of trust deed.* Where a person makes a loan to a party at the time insane, but not knowing such fact of insanity, and at the request of the borrower pays a previous encumbrance secured by trust deed and causes such trust deed to be released, he may, notwithstanding such second trust deed is void, have a foreclosure of the first trust deed upon the theory that the release of the same was a mistake of fact—no rights of *bona fide* purchasers or encumbrancers having intervened.

Foreclosure proceeding. Error to the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed April 11, 1904.

**Statement by the Court.** This is error to reverse a decree on a bill filed by defendant in error against plaintiff in error. The bill contains the following averments :

November 20, 1894, John W. Doxey, Jr., executed to Andrew Peterson and George W. Bay his promissory note 'for the sum of $600, payable three years after date, with seven per cent interest semi-annually, the interest evidenced by coupon notes, and said Doxey, Jr., and Minnie L., his wife, executed a trust deed of certain premises to secure

Doxey v. Western State Bank.

payment of said indebtedness. August 23, 1895, said Doxey, Jr., executed to his own order his note for $1,000, due three years after date, with interest at seven per cent per annum, payable semi-annually, and evidenced by six coupon notes for $35 each, and endorsed said notes and delivered them to the bank. Only the first of the coupon notes was paid by him. Also, at the last mentioned date said Doxey, Jr., and wife, to secure payment of the said indebtedness, and of $100 solicitor's fees, executed a trust deed of the same premises conveyed by them to secure payment of said sum of $600 and interest.

Peterson and Bay sold the $600 note and interest coupons and the first mentioned trust deed to Joseph and Minnie Miller, about December 2, 1894, and the first note for interest on said $600 was paid to them. When said $1,000 note and coupon notes for the interest thereon and said trust deed to secure payment of said note and interest were executed, said Doxey, Jr., requested complainant to take up said notes held by Joseph and Minnie Miller, and complainant, at said request, purchased said notes from the Millers and paid therefor $600 and interest from May 20, 1895, till September 23, 1895, by which purchase complainant became the owner of said principal note for $600 and the coupon notes for interest thereon. John W. Doxey died intestate September 15, 1896, leaving Minnie L. Doxey, his widow, and Louis J. Doxey, the defendant, his son, his only heirs at law. December 20, 1894, John W. Doxey was found insane, but, at the time he executed said trust deed to secure payment of said $600, etc., he was of sound mind and memory, and also was of sound mind and memory when he executed said note for $1,000 and the trust deed to secure payment thereof, etc., and complainants were ignorant that his sanity had ever been questioned, and that if complainant, the Western State Bank, had been advised of any proceedings in regard to the sanity of said John W. Doxey, it would not have made said $1,000 loan. September 24, 1895, Andrew Peterson, trustee in the first mentioned trust deed, and the president of complainant, the

Western State Bank, by direction of the bank, released the first mentioned trust deed, and the bank marked paid the principal note for $600 and the coupon notes for interest thereon, acting on the security of said second trust deed, and its purchase of the first mentioned note for $600 and the coupon notes for interest thereon, and the trust deed to secure the same.

The prayer of the bill is, in substance, that the above mentioned release and the making of the $600 note, and the coupon notes for interest thereon, may be treated as executed and done by mistake, and that complainant, the bank, may be subrogated to the rights of the Millers, and for such other and further relief as the case may require, etc. John W. Doxey answered, the issues were made up, and the cause was referred to a master, who found, among other things, that the complainant, the Western State Bank, paid from the $1,000 loan to Doxey, Jr., deceased, to the Millers, the sum of $623 to take up the notes which they held, and that there was due the bank on account of the $1,000 loan, the sum of $1,603.73, for which the bank had a valid lien on the premises described in both trust deeds. Objections were made to the report, which stood as exceptions on the hearing. The court decreed, among other things, that the bank had no actual knowledge of Doxey, Jr., having been declared insane, at the time it caused the notes for $600 and the coupon notes for interest thereon to be cancelled, and the trust deed to secure the same to be released, but believed that, on payment of the same, it would have a valid first lien on the premises, and that, in causing said cancellation and release, it acted on a mistake of fact, etc. The court declared void said release and cancellation, and found due on the $600 loan the sum of $955.15, and, in addition thereto, $100 solicitor's fees, provided for by the trust deed securing the $600 note, and decreed a sale of the premises.

E. W. ADKINSON, for plaintiff in error.

WILLIAM E. CLOYES and ROBERT C. BENNETT, for defendants in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Counsel for both parties have argued the cause on the hypothesis that the decree can only be sustained, if at all, on the theory that the complainant, the Western State Bank, on payment of the amount secured by the first trust deed, which was owned by the Millers, became subrogated to the rights of the Millers under that trust deed. This, although such was not the theory of the learned chancellor who heard the cause, as evidenced by the decree. It is not decreed that the bank is entitled to be subrogated to the right of the Millers. There is no hint of the doctrine of subrogation in the decree; and to apply that doctrine to the facts of the case is difficult, if not impossible. It was proved, and the court finds, that December 20, 1894, John W. Doxey was adjudged insane by the County Court of Cook County. The court also finds, and counsel agree, that the second trust deed executed August 23, 1895, was and is void. This, on the presumption that the insanity of Doxey, deceased, continued till August 23, 1895, when he executed the trust deed of that date. If the deed of that date was void, no interest in the premises which it purports to convey passed by it to the bank, and therefore the bank had no interest in the premises to protect by the purchase of the prior trust deed. If a third person, having no interest in mortgaged premises, voluntarily pays the indebtedness secured by the mortgage, he is not entitled, merely by such payment, to be subrogated to the rights of the mortgagee. Pearce v. Bryant, 121 Ill. 590, 597; White v. Cannon, 125 Ill. 412, 416; Boughton v. Cameron, 99 Ill. App. 600, 621.

The theory of the decree is that the bank was a purchaser of the first trust deed. The court finds that the bank was ignorant, in fact, that Doxey, deceased, had been adjudged insane, and loaned its money in good faith, believing that the second trust deed was valid; that it so believed when it purchased the indebtedness secured by the first trust deed, and that it caused the first trust deed to be

released by a mistake of fact, namely, the mistake in believing that Doxey, Jr., when he executed the second trust deed, was sane, it having no actual knowledge that he had been adjudged otherwise. It is contended by defendants' counsel that the court's finding that the bank had no actual knowledge of the insanity of Doxey, deceased, is not sustained by the evidence. The application by Doxey for the $1,000 loan was in writing signed John W. Doxey. That the signature is genuine was proved by the witness Krusemarck. The same witness was in the employ of the bank, his business being to appraise real estate and take applications for loans. He testified that he took the acknowledgment of Doxey, Jr., to the trust deed August 23, 1895, the date of its execution; that August 24, 1895, he went to the house of Doxey, deceased, number 5426 Wentworth avenue, to procure the signature of his wife, Mrs. Doxey, to the deed, and saw him there; that he was in the room where his wife signed and acknowledged the trust deed, and told her that witness had come to have her sign the deed; that Doxey did nothing to attract witness' attention, and that he, witness, thought Doxey had sufficient mental capacity to protect his own interest, and that Mrs. Doxey said nothing about his being mentally unsound. A transcript of the proceedings in the County Court "In the matter of the alleged insanity of John W. Doxey" was put in evidence, and shows that, on his being adjudged insane, he was ordered to be committed "to the Illinois Hospital for the Insane at Kankakee." The testimony of the witness Krusemarck, together with the fact that John W. Doxey was found at his residence in Chicago, after having been adjudged insane by the County Court, and committed to an hospital for the insane, is not only evidence tending to prove that the bank had no actual knowledge of his insanity, but tends to prove actual belief on the part of the bank that he was sane. That, under the circumstances, the bank should be regarded as a purchaser of the first trust deed, is equitable and just to the bank, and works no injustice to the defendant, Louis J. Doxey, or any one. The

bank paid its money in discharge of the indebtedness secured by the deed. The defendant, Louis J. Doxey, is not a purchaser, but takes by descent, as heir, and the property which he so takes was pledged to secure the $600 loan by Peterson and Bay to his father, and he now seeks to avoid payment of that loan. In his answer to the bill he substantially admits that the bank purchased the $600 note, as follows: "This defendant, further answering, says, that the said complainants in the amended bill of complaint had no interest in the real estate mentioned in said trust deeds on the 23rd day of August, 1895, *which warranted them in purchasing said note and being subrogated to the rights of the holders of said note and because the said purchase was made with the money contracted by them to the said John W. Doxey, Jr.*, and, by reason thereof, the said complainants became invested with no interest in the said $600 note and trust deed securing the same."

The bank, as the purchaser of the $600 note, was entitled to a foreclosure of the trust deed executed to secure its payment.

The decree will be affirmed.

*Affirmed.*